UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20258-CIV-ALTONAGA/O'SULLIVAN

HAYAT AARRAS; et al,

     Plaintiffs,

v.

TRUMP MIAMI RESORT
MANAGEMENT LLC, a foreign limited
liability company; et al.,

     Defendants.

_____/

**DEFENDANT TRUMP MIAMI RESORT MANAGEMENT LLC'S**
**MOTION FOR SUMMARY FINAL JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT**

Defendant Trump Miami Resort Management LLC, ("Defendant" or "The Hotel"),

pursuant to Rule 56(c), Federal Rules of Civil Procedure, and Local Rule 56.1, respectfully

moves for the entry of summary final judgment.

                                     Jonathan A. Beckerman
                                     Jorge Zamora, Jr.
                                     LITTLER MENDELSON, P.C.
                                     Wells Fargo Center
                                     333 SE 2nd Avenue, Suite 2700
                                     Miami, FL 33131
                                     Tel. 305.400.7500
                                     Fax. 305.675.8497

                                     *Counsel for Defendant*
                                     Trump Miami Resort Management LLC

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Summary judgment should be entered in favor of The Hotel and against Plaintiffs on their claims for unpaid wages and unpaid overtime premiums under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  The Hotel is not, and has never been, Plaintiffs' "employer" under the FLSA.

This lawsuit arose after the Hotel gave Co-Defendant Eden Tours ("Eden Tours") dominion over part of its property to host a Passover program for approximately 800 tour group guests from April 13-23, 2014 ("2014 Program").  The Hotel provided Eden Tours with meeting, event, banquet, and kitchen space.  Eden Tours in turn contracted directly with Co-Defendant Asai, Inc. to staff the event with temporary workers.  The Hotel did not, and had no authority to:  (1) decide for whom, nor how many, individuals to hire to staff the 2014 Program; (2) design the management structure under which the Plaintiffs worked; (3) decide when Plaintiffs' work began each day during the 2014 Program; (4) decide when the Plaintiffs started and stopped their work throughout the day; (5) decide whether any Plaintiff should be disciplined or retained; (6) prepare Plaintiffs' work assignment; (7) hire, fire, or create or modify Plaintiffs' terms or conditions of employment; (8) determine Plaintiffs' pay rates or method of payment; or (9) prepare payroll or issue payment of Plaintiffs' wages with respect to their work.  In addition, The Hotel did not create or maintain employment records for Plaintiffs.

The FLSA provides that no joint employment relationship can be established under these circumstances.  The totality of the economic circumstances establish that Plaintiffs were not economically dependent upon the Hotel.  *See*, *e.g.*, *See Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012) )(providing that economic dependence is at the core of the joint employer analysis).  Rather,  the undisputed material facts establish that Plaintiffs were

economically dependent on Asai's, and possibly Eden Tours', ability to book catered events that, in this case, just so happened to take place at the Hotel pursuant to a contractual arrangement with Eden Tours.  The Hotel bore no financial or managerial responsibility for Plaintiffs. The only oversight provided by the Hotel was macro-level oversight to render its facilities accessible to the program staff and facilitate a pleasant stay at the Hotel for program participants.  *See Aimable v. Long & Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994)(holding that specific indicia of control over workers are necessary to establish joint employment).  Asai alone held the ability to hire, fire, and pay program staff members. Thus, summary judgment is warranted in the Hotel's favor because it was not a "joint employer" of the Plaintiffs under the FLSA.

## II.     ARGUMENT

### A.     Joint Employment Under The FLSA.

Liability under the FLSA exists only if there is an employer-employee relationship.  *See* 29 U.S.C. § 207.  The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  An entity "employs" a person under the FLSA if it "suffer[s] or permit[s]" the individual to work. *Id*. § 203(g). In order to determine whether an alleged employer "suffer[s] or permit[s]" an individual to work, we ask "if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996) (quoting *Goldberg v. Whitaker House Coop., Inc*., 366 U.S. 28, 33, 81 S.Ct. 933, 936–37, 6 L.Ed.2d 100 (1961)).  An employee may have more than one employer, and "whether the employment by the employers is to be considered joint employment or separate and distinct employment for purposes of the act depends upon all the facts in the particular case."  29 C.F.R. § 791.2(a).

## 1.        Horizontal Joint Employment

A horizontal joint employment relationship may exist when two (or more) employers each separately employ an employee and are sufficiently associated with or related to each other with respect to the employee.  U.S. Dept. of Labor, Wage and Hour Division, Administrator's Interpretation No. 2016-1, Jan. 20, 2016 ("AI No. 2016-1") at 5; *Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 596120 (M.D. Fla. Feb. 29, 2008). Thus, the focus should be on the relationship between the potential horizontal joint employers.  *See* AI No. 2016-1 at 7. Pursuant to the FLSA, a horizontal joint employment relationship will generally be found in situations such as:

> (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or
> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b) (footnotes omitted); *see Davidson*, 2008 WL 596120.   The Department of Labor ("DOL") recognizes the following facts as being relevant in "analyzing the degree of association between, and sharing of control by, potential horizontal joint employers:"

- who owns the potential joint employers (i.e., does one employer own part or all of the other or do they have any common owners);
- do the potential joint employers have any overlapping officers, directors, executives, or managers;
- do the potential joint employers share control over operations (e.g., hiring, firing, payroll, advertising, overhead costs);
- are the potential joint employers' operations inter-mingled (for example, is there one administrative operation for both employers, or does the same person schedule and pay the employees regardless of which employer they work for);
- does one potential joint employer supervise the work of the other;
- do the potential joint employers share supervisory authority for the employee;
- do the potential joint employers treat the employees as a pool of employees available to both of them;

- • do the potential joint employers share clients or customers; and
- • are there any agreements between the potential joint employers.

AI No. 2016-1 at 8 (citations omitted).

### 2.    Vertical Joint Employment

A vertical joint employment relationship typically exists where a company has contracted for workers who are directly employed by an intermediary company.  *Chao v. A-One Medical Services, Inc.*, 346 F. 3d 908, 917 (9th Cir. 2003).   "In contrast to the horizontal joint employment analysis, where the focus is the relationship between the employers, the focus in vertical joint employment cases is the employee's relationship with the potential joint employer and whether that employer jointly employs the employee."  AI No. 2016-1 at 9.  In analyzing joint employer status, courts within the Eleventh Circuit have regularly relied upon the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801–72 ("AWPA") given its detailed guidance regarding the definition of joint employer. *See Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012).  While Plaintiffs contend that The Hotel is liable under a horizontal joint employment theory, the factors present in vertical employment cases may be relevant for purposes of determining liability.  *See Davidson*, 2008 WL 596120 at *3 n.4. The Eleventh Circuit has derived an economic realities test for determining whether vertical joint employment relationship exists, the first five factors of which are drawn from regulations relating to the AWPA and the last three from case law:

[1] The nature and degree of control of the workers;
[2] The degree of supervision, direct or indirect, of the work;
[3] The power to determine the pay rates or the methods of payment of the workers;
[4] The right [ ] to hire, fire, or modify the employment conditions of the workers;
[5] Preparation of payroll and the payment of wages.
[6] ownership of the facilities where work occurred, and
[7] performance of a specialty job integral to the business. . . . [and]
[8] investment in equipment and facilities.

*Id.* at 1175-76 (11th Cir. 2012) (internal citations and quotations omitted).  Moreover, courts within the Circuit have also looked at other factors, including whether the purported employer created or maintained any employment records for the alleged employees, in addressing the issue of joint employment.  *See Diaz v. U.S. Century Bank*, 2013 WL 2046548, *10 (S.D. Fla. May 14, 2013).  In applying the test, the courts are guided by a number of principles:

> *First*, the question in "joint employment" cases is not whether the worker is more economically dependent on the [contracting entity] or the [alleged employer], with the winner avoiding responsibility as an employer .... [T]he focus of each inquiry must be on each employment relationship as it exists between the worker and the party asserted to be a joint employer.
> *Second*, no one factor is determinative …. [T]he existence of a joint employment relationship depends on the economic reality of all the circumstances.
> *Third*, the factors are used because they are indicators of economic dependence. They are aids—tools to be used to gauge the degree of dependence of alleged employees on the business to which they are connected .... Thus, the weight of each factor depends on the light it sheds on the [ ]workers' economic dependence (or lack thereof) on the alleged employer, which in turn depends on the facts of the case.
> *Fourth*, a joint employment relationship is not determined by a mathematical formula .... The purpose of weighing the factors is not to place each in either the contractor or the [alleged employer's] column, but to view them qualitatively to assess the evidence of economic dependence, which may point to both.
> *Fifth*, in considering a joint-employment relationship, we must not allow common-law concepts of employment [such as agency law] to distract our focus from economic dependency.

*Layton*, 686 F.3d at 1177-78 (emphasis added).  Thus, the core question is whether the putative employee is economically dependent upon the alleged employer.  *See Aimable v. Long & Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994).

**B.**     **The Hotel Was Not Plaintiffs' Joint Employer And Therefore Not Liable For the Wages Asai Failed To Pay Them.**

Plaintiffs allege that The Hotel is responsible for paying their wages and overtime premiums under a *horizontal* joint employment theory of liability.  *See* Amended Complaint at ¶ 70 [ECF No. 83].  Plaintiffs' claims fail regardless of whether the court applies a horizontal or vertical joint employer analysis.

5

1.      **The Hotel Was Not Plaintiffs' Horizontal Employer.**

The undisputed evidence weighs against a finding that The Hotel was Plaintiffs

horizontal joint employer.  The DOL explains that:

> [h]orizontal joint employment should be considered when an employee is employed by
> two (or more) technically separate but related or overlapping employers. For example, the
> horizontal joint employment analysis would apply where a waitress works for two
> separate restaurants that are operated by the same entity and the question is whether the
> two restaurants are sufficiently associated with respect to the waitress such that they
> jointly employ the waitress; or where a farmworker picks produce at two separate
> orchards and the orchards have an arrangement to share farmworkers. In these scenarios,
> there would already be an established employment relationship between the waitress and
> each restaurant, and between the farmworker and each orchard.

AI No. 2016-1 at 8-9.  Rulings throughout the country involving the determination of horizontal

joint employment under the FLSA illustrate these examples and highlight the facts courts deem

relevant to the analysis.

In *Zachary v. Rescare Oklahoma, Inc.*, 471 F. Supp. 2d 1175 (N.D. Okla. 2006), the court

found the defendant-parent company to be the horizontal joint employer of plaintiffs where it

acted in the interest of its subsidiary by virtue of: (1) the parent company's involvement in

decisions relating to how the subsidiary paid its employees (plaintiffs); and (2) the fact the parent

company exercised direct supervision of its subsidiary's employees and its operations.  In the

same way, the court in *Davidson v. Orange Lake Country Club, Inc.*, 2008 WL 254136 (M.D.

Fla. Jan. 29, 2008) held that a genuine issue of material fact existed as to whether the putative

employer was a horizontal joint employer of plaintiffs where evidence submitted demonstrated

that the employer and putative employer: (1) shared managers; (2) made no differentiation

between the employees of either entity; (3) shared operating techniques; (4) jointly had authority

to terminate employment of the employees; (5) jointly had authority to change employees' rate

of pay and their respective commission percentages; and (6) were both in the business of selling

timeshare units.  Likewise in *Chao v. Barbeque Ventures, LLC*, 2007 WL 5971772, at \*1, 5-6 (D. Neb. Dec. 12, 2007), the court held that separate legal entities who employed employees at five different restaurants were joint employers given their common ownership, management, and control where the same manager owned one legal entity, was the majority owner and manager of the other entity, and supervised the Area Director for all five restaurants.

The facts in this litigation are entirely distinct from those giving rise to a horizontal joint employer relationship.  The undisputed evidence establishes that The Hotel did not enter into any agreement with Asai whatsoever, much less any agreement with respect to sharing Plaintiffs' services or contemplating interchanging employees in connection with the 2014 Program.  *See* The Hotel's Statement of Undisputed Material Facts [ECF No. 220] ("SOF") at ¶ 8 n.5; 29 C.F.R. § 791.2(b)(1).  Unlike the putative employers in *Zachary*, *Davidson*, and *Chao*, as described in Sections B(2), B(4), and B(6) *infra*, The Hotel did not participate in any personnel decisions (hiring, firing, scheduling, discipline) or decisions with respect to the compliance of the FLSA (i.e. rate of pay or method of payment) pertaining to Plaintiffs.  *See* SOF 8-14, 38-40; 29 C.F.R. § 791.2(b)(2).  What is more, unlike the parent company in *Zachary* or the putative employer in *Chao*, The Hotel does not have any ownership in Asai nor is it legally related as a parent or subsidiary of Asai in any way.  *See* SOF at ¶ 8 n.4.  Unlike *Davidson* and *Chao*, The Hotel does not currently, and never has, shared directors or mangers with Asai; does not share its operations or ownership in its facilities with Asai; and is not in the business of: (1) hosting Passover events; (2) providing kosher catering services; or (3) providing temporary staffing services.  *See id.* at ¶¶ 6, 8 n.4.  Therefore, The Hotel never directly or indirectly shared control of Plaintiffs as contemplated by the FLSA.  *See* 29 C.F.R. § 791.2(b)(3).

In light of the clear dissociation/delineation between The Hotel and Asai, coupled with

Plaintiffs' failure to proffer any credible record evidence establishing a horizontal joint employment relationship between them and The Hotel, summary judgment should be granted in The Hotel's favor. Should the Court find it necessary to look beyond the horizontal joint employer analysis, scrutinizing the facts here using the economic realities test brings about the same finding as set forth *infra*—The Hotel is not Plaintiffs' joint employer.

### 2. The Hotel Was Not Plaintiffs' Vertical Joint Employer

### a. The Hotel Lacked Control Over Plaintiffs.

The Hotel had no meaningful authority with respect to Plaintiffs' employment. *See* SOF at ¶¶ 40-43. This factor does not encompass abstract notions of control; instead, "its focus is more properly limited to specific indicia of control (for example, direct employment decisions such as whom and how many employees to hire, whom to assign to specific tasks, and how to design the employees' management structure)". *Aimable*, 20 F.3d at 440. "A purported employer takes an overly active role in the oversight of work 'when it decides such things as (1) for whom and how many employees to hire; (2) how to design the employees' management structure; (3) when work begins each day; (4) when the laborers shall start and stop their work throughout the day; and (5) whether a laborer should be disciplined or retained.'" *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1178 (11th Cir. 2012) (quoting *Martinez–Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1209–10 (11th Cir.2003)). In *Aimable*, the Circuit found that this factor weighed against the plaintiffs because the putative employer "did not directly control the number of workers hired to do the work; it did not demand that [hiring entity] hire (or fire) specific individuals; and, it did not select specific workers to do specific jobs." *Aimable*, 20 F.3d at 440.

Contrary to Plaintiffs' allegations (*see* Amended Complaint at ¶ 70) the record evidence

demonstrates that Satz, not The Hotel, determined the number of individuals that needed to be hired for the 2014 Program and in what capacity. *See id.* at ¶¶ 9-12, 41. In order to do so, Satz recruited and served as the primary point of contact for Plaintiffs when he recruited them to work at the 2014 Program. *See id.* at ¶ 9. The hiring was complete when the individuals, including Plaintiffs, attended an audition prior to the event in which they demonstrated their proficiency carrying loaded trays and plates. *See id.* at ¶ 13. Employees of Eden Tours were the ultimate decision makers as to who in attendance at the audition was selected for what role during the 2014 Program. *See id.* Satz also designed Plaintiffs' management structure, under which they were to report to the banquet captains, who in turn reported to the maître d. *See id.* at ¶ 11. Satz determined when Plaintiffs' work started and stopped each day during the event, and he was also in charge of disciplining or choosing to terminate or retain Plaintiffs. *See id.* at ¶¶ 10, 12, 15. Plaintiffs have not presented any evidence showing otherwise. *See id.*; SOF at ¶ 41.

Like the putative employer in *Aimable*, The Hotel did not make any of these decisions with respect to Plaintiffs; therefore, The Hotel did not have control over Plaintiffs or their employment. *See id.* at ¶ 41; *Aimable*, 20 F. 3d at 440 (entity responsible for determining necessary number of workers, to recruit those workers, and compensate them for labor exercises "absolute, unfettered, and sole control over workers.").

### b.   The Degree Of The Hotel's Supervision, Direct Or Indirect, Of Plaintiffs' Work Was Nonexistent.

"Supervision over work includes overseeing the work and providing direction on a regular, even daily basis." *Tafalla v. All Florida Dialysis Services, Inc.*, 2009 WL 151159 (S.D. Fla. Jan. 21, 2009) (citations omitted). However, "[i]nfrequent assertions of minimal oversight do not constitute the requisite degree of supervision." *Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1179 (11th Cir. 2012) (quoting *Martinez–Mendoza*, 340 F.3d at 1211). If any of The

Hotel's interaction with Plaintiffs is considered oversight, such oversight was minimal and infrequent. *See* SOF at ¶¶ 24-39.   To overcome this deficiency, The Hotel anticipates that Plaintiffs will incorrectly point to the following individuals' involvement in the event:   (1) Consuelo Garcia ("Garcia"); (2) Renatto Valencia ("Valencia"); (3) Jennifer Santini; (4) Greg Sgarro; (5) The Hotel's pool staff; (5) The Hotel's set-up and break-down staff; and (6) The Hotel's culinary and stewarding staff.   *See* Amended Complaint at ¶ 70.   This prospective argument is displaced and misguided.

### i.     Garcia & Valencia's Actions Cannot Be Imputed to The Hotel.

The undisputed evidence shows that Garcia and Valencia were Asai employees during the relevant time.   They were not scheduled to work for The Hotel during the 2014 Program, were not on The Hotel's payroll, were not reporting their work hours to The Hotel, and were not reporting to any management employee of The Hotel.   *See id*. at ¶¶ 18, 21-23.   Satz alone hired Garcia and Valencia, negotiated their pay rate, and set their method of pay for the 2014 Program. *See id*. at ¶ 20.   During the event, Garcia and Valencia were not supervised and did not report to anyone employed by The Hotel.   *See id*. at ¶ 22.   Any assignments they received during the 2014 Program were issued by the maître d, which, in turn, were passed down to Plaintiffs.   *See id*. at ¶ 23.   Thus, any supervision, direction, or control over Plaintiffs attributable to Garcia or Valencia cannot be imputed to The Hotel.   *See Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274, 1278 (S.D. Fla. 2012) aff'd, 494 F. App'x 940 (11th Cir. 2012)(individual is an employee if putative employer had the power to hire and fire the employee; supervised and controlled employee work schedules or conditions of employment; determined the rate and method of payment; and maintained employment records for pertinent time period).

ii.     **Neither Santini, Sgarro, Nor The Culinary, Stewarding, Pool, Or Set-Up/Break-Down Staff Supervised Plaintiffs.**

At the time of the 2014 Program, Santini worked as the Catering and Conference Service Assistant Manager for The Hotel.  *See* SOF at ¶¶ 24-28.  Santini's direct interaction with Plaintiffs or the front-of-house staff was limited to troubleshooting issues such as guest complaints, advising as to which area of the TND property was to be used, and ensuring the adequate provisioning of equipment such as tables and chairs.[1]  *See id.*  Sgarro is The Hotel's Executive Chef and assisted New Star Caterers ("New Star") in the Legend's kitchen.  *See id.* at ¶ 30.  To the extent that Sgarro, or any other culinary staff member of The Hotel, interacted with Plaintiffs, such interaction was limited to providing information relating to: (1) what food was going to be served; (2) guest allergies, dietary restrictions, or specific food ordered by particular guests; (3) filling food orders; or (3) advising Plaintiffs where to locate certain food items.[2]  *See id.* at ¶ 31.  The stewarding staff's involvement was further limited to providing equipment to New Star necessary to:  (1) effectively run the kitchen; (2) maintain that equipment during the 2014 Program; and (3) coordinate the provision of linens.  *See id.* at ¶¶  32, 35.  Pool staff interacted with Plaintiffs only to: (1) help them locate or operate pool equipment; (2) provide towels; or (3) provide information to ensure compliance with the standards of operations for the

---

[1] Co-Defendant Fuchs made several hyperbolic statements about Santini "running the event," "being in charge," and supervising and directing the front-of-house or kitchen staff.  However, when asked for specific examples, Fuch's testified that he could not recall specific instances and stated Santini was in charge of "troubleshooting" and was a "firefighter" who remedied service issues and/or guest complaints.  *See* SOF at ¶ 24.  Fuch's statements should be dismissed and ignored due to his inability to support his sweeping conclusions in any meaningful way.

[2] As with Santini, Fuchs attempted to inflate Sgarro's participation in the 2014 Program by making statements such as "everyone listens to the executive chef" and "there was nobody higher than…[Sgarro]."  However, when pressed to provide specific examples of Sgarro's participation, Fuchs could only specifically testify that Sgarro was a liaison who helped Fuchs setup a system in the kitchen to help manage delivery of food and the sourcing of materials.  *See* SOF at 30.

pool deck.  SOF at ¶ 37.  The alleged supervision these employees of The Hotel effected is analogous to that described in the cases of *Layton*, *Aimable*, *Martinez-Mendoza*, and *Tafalla*—in all of which courts consistently held was insufficient to weigh in favor of joint employment.

In *Layton*, the plaintiff-drivers were hired by a third party contractor to deliver packages on behalf of DHL.  686 F.3d at 1173-74.  In analyzing whether DHL was plaintiffs' joint employer, the Eleventh Circuit held that even where DHL: (1) directly supervised plaintiffs loading packages onto their trucks at the DHL warehouse on a daily basis; (2) audited plaintiffs' vehicles and uniforms to ensure compliance with DHL standards; and (3) communicated with them directly via scanners if a "non-routine" situation occurred that required re-delivery of a package or addressing a customer complaint—such actions did not support a finding of joint employment.  *See Layton*, 686 F.3d at 1179.  The aforementioned Defendant employees' involvement is analogous to DHL's involvement in *Layton*, where the court held that such actions were evidence of "a small amount of supervision" that was not strongly probative of joint employment.  *See id.*  The Hotel's actions were limited to overseeing the proper execution of the 2014 Program at a macro level, ensuring the general rules of TND were being followed, and addressing guest issues as they arose (i.e. serving guests who complained during Sedar dinner, advising of allergies and specific food requests, ensuring proper provisioning of equipment, and facilitating the delivery of food to guests).  *Layton* provides that this simply is not enough.  *See id.*

Similarly in *Aimable*, the Court held that occasional commands from a putative employer for workers to do certain tasks do not establish sufficient supervision to establish that entity as an employer.  *See Aimable*, 20 F.3d at 441.  In *Aimable*, the general instructions from the putative employer to the laborers as to which crops to harvest at what particular time, or occasional

commands given indirectly to the laborers through the hiring entity regarding how to execute their assigned tasks, were deemed to be *de minimis*.  *See Aimable*, 20 F.3d at 441.  Those instructions demonstrated only that, except on occasions, supervision and oversight of the workers was left to the hiring entity.  *Id.*

Likewise in *Tafalla*, 2009 WL 151159 at *7, the court found that dialysis nurses' reliance on the putative employers' orders with respect to the manner of carrying out dialysis treatment of its patients did not weigh in favor of joint employment.  The evidence presented in *Tafalla* indicated that the alleged employees were only supervised by the putative employer in connection with specific patient care issues, while all other issues were supervised by the nurses' employer. *See id*.  The actions of the aforementioned employees of The Hotel are analogous to the type of oversight found in *Aimable* and *Tafalla* to be immaterial to the joint employer analysis.  The Hotel staff merely gave general instructions with respect to food delivery and equipment, with indirect commands given through Satz, Asai, or Eden Tours, limited to addressing guest or service issues observed.  *See* SOF at ¶ 27.  Further, just as in *Aimable* and *Tafalla*, the lion's share of Plaintiffs' supervision and oversight was left to Satz and other employees of Asai.  *See id*.; SOF at ¶¶ 12, 22-23, 27.

Additionally, Santini's role in ensuring compliance with the contract between The Hotel and Eden Tours is not considered oversight sufficient to rise to the degree of supervision envisioned by the regulations to weigh in favor of joint employment.  *See Martinez-Mendoza*, 340 F.3d at 1211 (ensuring compliance with contract does not weigh in favor of joint employment). Thus, even if Plaintiffs could show that The Hotel issued certain commands to them beyond commands to address non-routine issues as described *supra*, which they cannot, they would have to show that such commands were more than *de minimis* and were the rule,

rather than the exception. *See id*. Accordingly, this factor also weighs against Plaintiffs' attempt to establish The Hotel as a joint employer.

> **c.     The Hotel Had No Power To Determine Plaintiffs' Pay Rates Or The Methods Of Their Payment.**

The undisputed evidence demonstrates that The Hotel did not, and was not authorized to, determine Plaintiffs' pay rate or method of payment. *See* SOF at ¶ 41. Satz alone negotiated and set Plaintiffs' pay rates and method of payment. *See id*. at ¶ 10. In *Aimable*, the plaintiffs attempted to convince the court that the putative employer controlled the amounts they were paid by controlling the amount that it paid the entity that employed them. The Circuit rejected this argument as too attenuated, especially in light of the hiring entity's ability to pocket any increased payments that the putative employer chose to pay it instead of forwarding such increases along to the workers. *Aimable*, 20 F.3d at 442. This specious argument is not available to Plaintiffs here, as The Hotel paid Asai nothing with relation to the 2014 Program. Eden Tours alone contracted with Asai and tendered to it the monies those parties agreed upon. *See* SOF at ¶¶ 8, 16. The Hotel and Asai were not in any type of contractual relationship and The Hotel had no control whatsoever of Plaintiffs' wages or method of payment. *See id*. at ¶¶ 8 n.5, 41. Consequently, this factor also demonstrates Plaintiffs' lack of economic dependence on The Hotel.

> **d.     The Hotel Lacked The Right, Directly Or Indirectly, To Hire, Fire, Or Modify The Employment Conditions Of Plaintiffs.**

The Hotel did not, nor did it have the authority, to hire, fire, or modify Plaintiffs' terms or conditions of employment. *See* SOF at ¶¶ 40-42. Satz alone possessed and exercised this authority. *See id*. at ¶¶ 9-15. The Hotel expects that Plaintiffs will nevertheless argue that The Hotel was involved in the decision to hire Plaintiffs because Valencia and Garcia were present

during the audition process and evaluated the applicants' proficiency to carry trays.  *See* Amended Complaint at ¶ 70.  This argument is misguided because Valencia and Garcia were not and had no authority to act as employees of The Hotel during this process and Eden Tours was the ultimate decision-maker.  *See id*. at ¶¶ 13, 19.   What is more, Valencia and Garcia are not management-level employees of The Hotel, and they have no authority to make hiring decisions for that organization.  *See id*. at ¶ 18 n.7.

The Hotel anticipates that Plaintiffs will also argue that The Hotel's Human Resources ("HR") department was involved in the complaint resolution process related to plaintiffs and termination of one or more Plaintiffs.  *See* Amended Complaint at ¶ 70.  Such argument would also be baseless in light of the record evidence.  *See* SOF at ¶ 39.  The only proffered evidence in this action of alleged interaction between The Hotel's HR department and any of the Plaintiffs was through Plaintiff Edgar Ruiz ("Ruiz").  He testified that he approached The Hotel's HR department to complain about Plaintiffs' working conditions and express his concern with respect to Satz.  *See id*.  The Hotel's HR department advised Ruiz they could not help him because he was not an employee of The Hotel.  *See id*.  Contrary to the allegation in Plaintiffs' Complaint, The Hotel had no involvement in any "complaint process," in Ruiz's subsequent termination, or in the termination of any other Plaintiff.  *See id*.

Even assuming for summary judgment purposes that this was not the case, where a putative employer has the authority to impact the hiring of the alleged employees, such involvement in the employment process is considered minimal and weighs against the finding of joint employment.  *See Layton*, 686 F.3d at 1179 (mandatory pre-hire background checks and authority to make business decisions that could reduce employees' hours is minimal and not indicative of joint employment).  The court in *Beck v. Boce Group, L.C.*, 391 F. Supp. 2d 1183,

1189 (S.D. Fla. 2005) went further and held that neither the putative employer's involvement in the hiring process in providing necessary forms, personnel handbook and policies, and procedures that affected the decision to hire employees, nor its active involvement in "consulting" with hiring entity with regard to various employment issues (i.e. how to terminate an employee), was insufficient to establish that putative employer had power to hire, fire or discipline employees. The Court here does not have to go so far. The Hotel *was not* involved in any part of the Plaintiffs' employment process. *See id*. at ¶¶ 39-43. The Hotel had no authority to hire, fire, discipline, or reassign the task or pay of any Plaintiff. *See id*. Therefore, in consideration of the record evidence, this factor also counsels in favor of finding that The Hotel was not Plaintiffs' joint employer.

###### e.      The Hotel Did Not Prepare Plaintiffs' Payroll And Was Not Responsible For Paying Their Wages.

The Hotel was not responsible for or involved in the preparation of payroll or payment of Plaintiffs' wages. *See* SOF at ¶ 41. "This factor is probative of joint employment because of the likelihood that when a business undertakes to help [another entity] prepare its payroll and pay its wages it is likely that the [business] lacks economic substance on which the workers can solely depend." *Antenor*, 88 F.3d at 936. That was not the case here. In addition to negotiating pay rates and determining pay methods, Satz—not The Hotel—was responsible for and indeed prepared payroll and made at least partial payments some of the workers he recruited to work the 2014 Program, including some of the Plaintiffs. See SOF at ¶¶ 16, 16 n.6, 41. This was not a situation where Satz or Asai lacked "economic substance" on which Plaintiffs could solely depend; to the contrary, Satz received full payment from Eden Tours, sufficient to pay the wages to all Plaintiffs, but chose not to. *See* SOF at ¶ 16. As with the other factors above, this factor weighs against finding that The Hotel was Plaintiffs' joint employer.

### f.   Ownership Of The Facilities Where Plaintiffs' Work Occurred Is Irrelevant.

Defendant owns the facilities where Plaintiffs performed their work.  *See* SOF at ¶¶ 1, 4, 5.  Nevertheless, the weight the Court attributes to this factor should be lessened because, unlike *Antenor,* where the putative employer was attributed with having the power to prevent labor law violations on its property, the evidence shows that The Hotel effectively rented Eden Tours dominion over a part of its property for the time period in question.  *See* SOF at ¶¶ 5-15; *cf. Antenor*, 88 F.3d at 936-37.  In addition, the undisputed record evidence verifies that, like *Aimable*, the majority of the relevant factors weigh against a finding of joint employment, effectively rendering Defendant's ownership of TND irrelevant in establishing a joint employer relationship.  *See Aimable*, 20 F.3d at 444 ("we find that the five regulatory factors (all of which strongly indicate that this was not a joint employments situation) demonstrate that appellants were not economically dependent upon—and thus not employees of—[the putative employer]" despite ownership of the facility where work was performed).

### g.   Plaintiffs Did Not Perform A Job Integral To The Hotel's Business.

In *DHL*, the Eleventh Circuit held that this factor did not strongly support claims that DHL was a joint employer of delivery drivers hired by a DHL contractor, even though they obviously "performed a crucial task for DHL."  *Layton*, 686 F.3d at 1180.  The court noted in reaching this conclusion that the plaintiffs "did not work side-by-side with other DHL employees," performed most of their work without direct supervision by DHL, and were not restricted from performing that same job for other companies needing delivery services.  *See id*. Under those circumstances, plaintiffs' role did "not strongly support a conclusion that joint-employment relationship exists."  *See id*.  The Court should come to the same conclusion in the instant case.  Plaintiffs served tour group guests in discrete areas of TND's property during a

17

highly-specialized event that lasted only 10-days. *See* SOF at ¶¶ 5, 8, 17. While The Hotel could have provided such services, Eden Tours and the Hotel agreed that none of The Hotel's servers or banquet captains would work at the 2014 Program, much less alongside Plaintiffs. *See id.* at ¶ 8. They performed their work without direct supervision from The Hotel, and they were not restricted from working as banquet servers or captains for other entities. *See* SOF at ¶¶ 11, 18-23, 40-42. Indeed, Plaintiffs were hired for a temporary assignment serving only tour group guests. *See id.* at ¶ 17. If the plaintiffs' role of delivering packages on behalf of DHL in *Layton* did "not strongly support a conclusion that joint-employment relationship exist[ed,]" than Plaintiffs' minimal role here certainly does not. *Cf. Layton*, 686 F.3d at 1180. Therefore, this factor also weighs against a finding of joint employment.

### h.     The Hotel's Investment In Equipment And Facilities Is Irrelevant.

Plaintiffs used The Hotel's equipment in executing some of their duties. *See* SOF at ¶¶ 25, 35, 37. They also used New Star and Eden Tours' equipment. *See id.* at ¶ 25. As a result, this factor does not tip the otherwise overwhelming balance of factors in favor of finding that The Hotel *was not* Plaintiffs' employer. The court in *Aimable* indicated that this factor was more appropriately considered when determining whether workers were employees or independent contractors, and not to determine joint employment. *Aimable*, 20 F.3d at 443. Even if this factor were given much weight, it is not clear who this factor would favor and therefore does not aid in the determination of joint employment status. *See Aimable*, 20 F.3d at 443 (holding that if it had applied this factor, it would not have known which direction it tipped the scales since both the landowner and contractor had contributed certain equipment to the project, rendering it irrelevant for purposes of joint employer analysis); *Layton*, 686 F.3d at 1181 (because both entities made investments in equipment, it does not aid in the court's joint employment inquiry).

i.      **The Hotel Did Not Create Employment Records For Plaintiffs.**

Creating or maintaining any employment records is another consideration in evaluating the economic reality of an alleged employment relationship.  *See Diaz v. U.S. Century Bank*, 2013 WL 2046548, *10 (S.D. Fla. May 14, 2013).  Here, like in *Diaz*, The Hotel had no reason to, and did not, create or maintain any of Plaintiffs' employment records.  *See* SOF at ¶ 43. Thus, this factor also weighs against finding The Hotel was Plaintiffs' joint employer.  *See id.*

**III.   CONCLUSION**

The record evidence *does not* establish that The Hotel meets the horizontal joint employer definition.  The Hotel had no arrangement with Asai to share employees, did not act in the interest of Asai in relation to Plaintiffs, and did not share in the control of Plaintiffs.

Plaintiffs likewise *cannot* establish that The Hotel was their vertical joint employer. Plaintiffs arguably possess two of nine factors weighing in their favor, while the seven other significant factors weigh heavily against finding The Hotel was a joint employer.   Giving decisive weight to the ownership of the facilities and investment in equipment and facilities would defeat the purpose of the guidance afforded by the FLSA, the DOL, and the courts, and replace it with a premises liability test, leading to contradictory results.

Simply put, the undisputed facts establish that The Hotel's minor role in the 2014 Program of providing Eden Tours with a venue for its group event is insufficient to hold The Hotel liable as Plaintiffs' joint employer under the FLSA.   The record evidence shows that Plaintiffs were economically dependent only upon Asai and/or Eden Tours booking kosher catered events.  There is simply no basis to find that Plaintiffs were economically dependent upon The Hotel under the circumstances.  Holding otherwise would improperly expand the legal definition of joint employment and inappropriately impute liability upon The Hotel for Asai's

CASE NO.: 1:15-cv-20258-CMA

actions—notwithstanding the fact that zero privity exists between them.

WHEREFORE, Defendant Trump Miami Resort Management, LLC, respectfully requests that this Honorable Court grant its Motion for Summary Final Judgment and that it grant all other appropriate relief, including its costs associated with the defense of this action.

Dated this 29th day of January 2016.                    Respectfully submitted,


*s/ Jorge Zamora, Jr.*
Jonathan A. Beckerman
Florida Bar No.: 0568252
E-mail: jabeckerman@littler.com
Jorge Zamora, Jr.
Florida Bar No. 0094713
E-mail: jzamora@littler.com

LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
305.400.7500
305.675.8497

*Counsel for Defendant*
Trump Miami Resort Management LLC

CASE NO.: 1:15-cv-20258-CMA

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of January 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the CM/ECF participants identified below.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to any non-CM/ECF participants identified at the time of electronic filing.

<u>*s/ Jorge Zamora, Jr.*</u>
Jorge Zamora, Jr.

21

**SERVICE LIST**

Roderick V. Hannah
Florida Bar No. 435384
Email: rhannah@rhannahlaw.com
RODERICK V. HANNAH, ESQ., P.A.
1250 South Pine Island Road, Suite 375
Plantation, FL 33324
Tel: 954.362.3800
Fax: 954.362.3779
*Counsel for Plaintiffs*

 *(Served via transmission of Notices of
Electronic Filing generated by CM/ECF)*

Spenser Aronfeld
Florida Bar No. 905161
Email: aronfeld@aronfeld.com
ARONFELD TRIAL LAWYERS
3132 Ponce De Leon Boulevard
Coral Gables, FL 33134
Tel: 305.441.0440
Fax: 305.441.0198
*Co-Counsel for Plaintiffs*

 *(Served via transmission of Notices of
Electronic Filing generated by CM/ECF)*

Steven Satz, *pro se*
5955 LaSalle Street
Lasalle Ont. Canada N2J307
Email: stephensatz@hotmail.com

*(Served via E-mail)*

Frank Adan
*Individually and as President and Registered
Agent for ASAI, Inc.*
6649 Ficus Drive
Miramar, FL 32023
Email: Frankadan777@gmail.com

*(Served via E-mail)*

Kenneth J. Vianale
Florida Bar No. 169668
Email: kvianale@vianalelaw.com
Julie Vianale
Florida Bar No. 184977
Email: jvianale@vianalelaw.com
VIANALE & VIANALE LLP
5550 Glades Road, Suite 500
Boca Raton, FL 33431
Tel: 561.392.4750
Fax: 561.961.5191
*Counsel for Defendants New Star Caterers and
Abraham Fuchs*

*(Served via transmission of Notices of
Electronic Filing generated by CM/ECF)*

Eden Tours
David Goldwasser
4101 Pine Tree Drive
Apt. 706
Miami Beach, FL 33140
E-mail: davidgoldwasser@gmail.com

*(Served via E-mail)*

Firmwide:131956566.8 073227.1011