UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-20258-CIV-ALTONAGA/O'Sullivan

**HAYAT AARRAS**, *et al.*,

    Plaintiffs,
v.

**TRUMP PLAZA DORAL**, *et al.*,

    Defendants.
_____/

## ORDER

**THIS CAUSE** came before the Court upon Defendant, Trump Miami Resort Management, LLC's ("Trump['s]") Motion for Summary Final Judgment . . . ("Motion") [ECF No. 221] and Statement of Undisputed Material Facts . . . ("SMF") [ECF No. 220], filed January 29, 2016. The remaining Plaintiffs, Nil Yeliz Agudelo, *et al.* ("Plaintiffs") filed a Memorandum of Law in Opposition . . . ("Response") [ECF No. 232] and a Statement of Disputed Material Facts . . . ("SMF Response") [ECF No. 230] on February 26, 2016; Trump filed a Reply . . . ("Reply") [ECF No. 233] on March 7, 2016.

### I. BACKGROUND

This case arises out of an employment dispute. (*See generally* Amended Complaint . . . ("Amended Complaint") [ECF No. 83]). Trump operates the hotel Trump National Doral ("TND"), which Defendant Eden Tours, LLC ("Eden Tours") selected as the venue for a 10-day Passover celebration in 2014 ("the Event"). (*See* SMF ¶¶ 1, 4). Defendants, New Star Caterers ("New Star") and Asai, Inc. ("Asai"), were hired to cater and provide staff for the Event, respectively. (*See id.* ¶¶ 7, 8).

A number of individuals were involved with the Event and are relevant to the discussion below: Defendant Abraham Fuchs ("Fuchs") is president of New Star; Defendant Stephen Satz ("Satz") operates Asai; Defendant Norman Goldwasser ("Goldwasser") operates Eden Tours; Gregory Sgarro ("Sgarro") is Executive Chef at TND; Allison Dlugatz ("Dlugatz") is Director of Catering and Conference Services at TND; Jennifer Santini ("Santini") is Dlugatz's Assistant Director; and Consuelo Garcia ("Garcia") and Renato Valencia ("Valencia") are Trump employees, but were staffed as banquet captains at the Event via Asai, as a side-job outside their regular employment at TND. (*See id.* ¶¶ 7–8, 18; SMF Resp. ¶¶ 3(c), 3(d)).

Plaintiffs bring two claims under the Fair Labor Standards Act, 29 U.S.C. section 201 *et seq.* ("FLSA"), alleging minimum wage and overtime violations on behalf of all Plaintiffs collectively, as well as 57 personal claims for breach of contact on behalf of Plaintiffs individually. (*See generally* Am. Compl.).

## II. LEGAL STANDARD

Summary judgment is rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Burgos v. Chertoff*, 274 F. App'x 839, 841 (11th Cir. 2008) (internal quotation marks omitted) (quoting *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997)). "A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Channa Imps., Inc. v. Hybur, Ltd.*, Case No. 07-21516-CIV, 2008 WL 2914977, at *2 (S.D. Fla. July 25, 2008) (internal quotation marks omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). At summary

judgment, the moving party has the burden of proving the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the nonmoving party. *See Allen*, 121 F.3d at 646.

### III. ANALYSIS

Trump moves for summary judgment on all claims brought against it, arguing the undisputed facts show it was not Plaintiffs' vertical joint employer.[1] (*See generally* Mot.). Whether a defendant is a plaintiff's employer is a question of law, and can be determinative because the FLSA's protections do not apply in the absence of a qualifying employer-employee relationship. *See Freeman v. Key Largo Volunteer Fire & Rescue Dep't, Inc.*, 841 F. Supp. 2d 1274, 1277–78 (S.D. Fla. 2012). To determine whether an employment relationship exists, courts apply a wide-ranging "economic realities" test that considers the degree of actual and potential control of the purported employer over the purported employee. *See id.* at 1278; *Villarreal v. Woodham*, 113 F.3d 202, 205 (11th Cir. 1997).

To evaluate the economic realities, courts use an eight-factor test, *see Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012), to determine whether the purported employees are "economically dependent" on the purported employer, *see Aimable v. Long and Scott Farms*, 20 F.3d 434, 439 (11th Cir. 1994). The term "employer" is afforded an expansive definition, *see Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 326 (1992); no factor is dispositive; and the comparative weight of each factor depends on the facts of the case. *See Antenor v. D & S Farms*, 88 F.3d 925, 932–33 (11th Cir. 1996).

---

[1] Plaintiffs concede they are no longer pursuing a "horizontal" joint employment theory. (*See* Resp. 5 n.1).

Trump argues at most only two of the eight factors[2] weigh in favor of an employment relationship, and "[g]iving decisive weight" to just those factors "would defeat the purpose of the guidance afforded by the FLSA, the DOL, and the courts." (Mot. 19 (alteration added)). Therefore, Trump concludes summary judgment is appropriate because, according to it, the undisputed record shows Plaintiffs are not economically dependent upon Trump. (*See id.*). Plaintiffs concede two factors weigh against an employment relationship but argue summary judgment is inappropriate because there remain genuine disputes of material fact as to most of the factors in this test. (*See* Resp. 7). Each factor is addressed below.

### A. Nature and degree of control

Trump asserts it lacked "meaningful authority with respect to Plaintiffs' employment" because Satz made most of the management decisions for the Event and "Plaintiffs have not presented any evidence showing otherwise." (Mot. 8). Plaintiffs argue sufficient control may be established by an "overly active role in the oversight of the work" (Resp. 7 (quoting *Aimable*, 20 F.3d at 441)), and "there is ample record evidence that both Trump's managerial and banquet supervisory employees exercised" such control over Plaintiffs during the Event (*id.*). In particular, Plaintiffs rely on the deposition testimonies of Fuchs, Goldwasser, and numerous Plaintiffs showing Trump employees Santini, Sgarro, Garcia, and Valencia controlled Plaintiffs' work. (*See id.* 7–14).

Trump takes the position all of the extensive deposition testimony relied on by Plaintiffs — by numerous deponents —should be "disregarded," primarily on the basis of the deponents' lack of personal knowledge. (*See* Reply 2–6). While some witnesses admit they lack personal knowledge as to certain details, particularly drawing all inferences in favor of the non-moving

---

[2] Courts have employed additional factors, and Trump briefly refers to at least a ninth factor (*see* Mot. 5, 19), but because the Court finds genuine issues of material fact on numerous factors, a potential additional factor would not alter the analysis here.

parties, none of the statements Trump uses demonstrates the deponents lack personal knowledge about *all* of the relevant facts adduced in their deposition testimonies. For example, Trump argues Fuchs's answer to a single question, regarding his personal knowledge as to who was "managing" Plaintiffs, not only casts his detailed testimony about Sgarro's purportedly elaborate management system (*see generally* Deposition Excerpt [ECF No. 219-3]) into doubt, but warrants effectively striking most of the deposition as a matter of law (*see* Reply 2–3). This argument fails to persuade.[3]

If Plaintiffs' theory of liability rested entirely on the baseless speculation of this single deponent, Trump's cited authorities regarding the value of unsubstantiated conjecture might be more persuasive. (*See* Reply 3 (misquoting and mis-citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986))). Here, though, Trump can only prevail on this factor as a matter of law if the Court, in Trump's words, "disregards" the thorough deposition testimonies of at least the four deponents Plaintiffs identify in their Response (*see* SMF Resp. ¶ 3) — including the sworn statements of Plaintiffs Richard Johnson and Erika Fonticiella (*see* Resp. 10–11), which Trump does not even mention in its Reply. A genuine issue of material fact remains. Therefore, the Court does not find this factor weighs against an employment relationship as a matter of law.

---

[3] Plaintiffs describe Sgarro's supervision not as personal, direct management, but rather delegated, indirect management within the confines of his system; if Fuchs understood the word "manage" to mean direct supervision, which is a natural reading, his admission he lacks personal knowledge of who "managed" Plaintiffs does nothing to undercut the remainder of his deposition testimony and does not defeat Plaintiffs' theory of liability. Trump also asserts the "undisputed evidence" shows Sgarro engaged only in insufficiently active "troubleshooting" communication (Reply 3), but Plaintiffs plausibly argue the record contains a factual dispute as to this issue as well (*see* Resp. 8–9).

### B. Degree of supervision

Trump explains to the extent its managers and staff interacted with Plaintiffs, "such oversight was minimal and infrequent." (Mot. 10). It is undisputed numerous Trump employees staffed the Event in some capacity, but Trump argues none of this participation establishes an employment relationship between Plaintiffs and Trump for two main reasons. First, Trump argues Garcia and Valencia were not acting as Trump employees while they staffed the Event and did not report to any Trump staff during that time. (*See id.*). Second, Trump insists no Trump employee supervised Plaintiffs during the Event. (*See id.* 11–14).

As above, Plaintiffs rely on deposition testimony showing "Trumps' [sic] managers, in particular Sgarro, Santini, and the banquet director, daily supervised and managed the work of the service staff members, including Plaintiffs." (Resp. 15). Plaintiffs also argue, regardless of whether Garcia and Valencia were acting as Trump employees themselves, there remains a factual dispute as to whether they were supervised by, and carrying out the orders of, Trump managers Santini and Sgarro at the Event. (*See id.*). Trump's Reply addresses Garcia and Valencia only in their individual capacities (*see* Reply 6–8), and rebuts Sgarro and Santini's supervision only with the ineffective collateral attack on the deposition testimonies of Fuchs and Merrigan as described (*see id.* 1–5). Therefore, the Court does not find this factor weighs against an employment relationship as a matter of law.

### C. Power to determine pay rates or methods

Trump argues it did not determine Plaintiffs' rate or method of payment, and was not authorized to do so. (*See* Mot. 14). Plaintiffs concede this factor does not support an employment relationship. (*See* Resp. 7).

### D. Right to hire, fire, or modify employment conditions

Trump argues it neither exercised nor had the power to hire, fire, or modify Plaintiffs' conditions of employment, as "Satz alone possessed and exercised this authority." (Mot. 14). According to Plaintiffs, there is sufficient evidence to conclude Garcia was involved in the auditioning process and Dlugatz was an actual decision-maker regarding who was selected to work at the Event. (*See* Resp. 16). Further, "Fuchs testified that Santini was involved in decisions to remove employees from the hotel property for disciplinary reasons, with the assistance of Trump's loss prevention personnel." (*Id.* 17 (citation omitted)). Trump responds to these arguments only with the ineffective collateral attack on the depositions (*see* Reply 1–5), so the Court does not find this factor weighs against an employment relationship as a matter of law.

### E. Preparation of payroll and payment of wages

Trump argues it was not responsible for paying Plaintiffs or involved in preparing payroll for them. (*See* Mot. 16). Plaintiffs concede this factor does not support an employment relationship. (*See* Resp. 7).

### F. Ownership of facilities

Trump concedes it owns the facilities where the Event took place, but argues the weight of this factor should be diminished because Trump largely relinquished control over the portion of the property in question during the Event and therefore had little power to prevent labor law violations. (*See* Mot. 17 (citing *Aimable*, 20 F.3d at 444)). Plaintiffs insist this factor retains value "given Trump's active involvement, management, control, supervision, and troubleshooting during the event as exercised by its managerial and supervisory personnel." (Resp. 18). Indeed, if the fact-finder determines Trump retained significant supervisory authority over the Event, there is no reason to believe it did not have at least knowledge of the employment situation at issue, as is the focus of this factor's inquiry. *See Layton*, 686 F.3d at

1180. Accordingly, this factor weighs toward an employment relationship and the Court rejects Trump's assertion it is of no consequence as a matter of law.[4]

### G. Performance of a specialty job integral to the business

Trump argues this factor does not "strongly support" a joint employment relationship because Plaintiffs "did not work side-by-side" with other Trump employees (Mot. 17–18 (citing *Layton*, 686 F.3d at 1180)), and Plaintiffs' work was not integral to Trump's business. This argument is based primarily on the assertion Plaintiffs were not supervised by Trump employees and "served tour group guests in discrete areas of TND's property during a highly-specialized event that lasted only 10-days [sic]." (*Id.*). Beyond the unsettled factual issue of the extent of Trump's supervision, Plaintiffs argue their work was indeed an integral part of Trump's business: "Trump maintained a full-time banquet staff at the TND and had a food and beverage department, which clearly included a banquet director and banquet captains such as Garcia and Valencia. Providing such banquet and food and beverage services to guests of the TND for group functions held at the hotel would clearly be an integral part of the business." (Resp. 18).

While Trump argues this "ignores the binding precedent set forth in *Layton*" (Reply 8), Trump has not established a lack of supervision here or persuasively shown why the delivery contractors at issue in *Layton* are factually analogous to the present situation, in which the Event guests were at least physically guests at TND with access to TND facilities and amenities. The parties dispute the proper scope of this inquiry, but it is reasonably arguable caring for guests at TND — even during a discrete special event — is an integral part of Trump's hotel business. Therefore, the Court does not find this factor weighs against an employment relationship as a matter of law.

---

[4] *Aimable* only held the ownership factor did not outweigh five other factors weighing against an employment relationship. *See* 20 F.3d at 444. Here, the Court does not find five factors weigh against employment as a matter of law.

### H. Investment in equipment and facilities

Trump concedes Plaintiffs used TND equipment, but argues this factor is irrelevant because Plaintiffs also used New Star and Eden Tours's equipment. (*See* Mot. 18 (citing *Aimable*, 20 F.3d at 443 (finding this factor of little value when both potential joint employers made significant investments in equipment and facilities))). Plaintiffs point to this factor as weighing toward an employment relationship because Trump concedes it provided necessary equipment and tools, without which Plaintiffs would not have been able to complete their jobs at the Event. (*See* Resp. 20). The Court is not convinced the comparative investments here are analogous to *Aimable*, but need not rule on this factor because, at best for Trump, this factor is excluded from the analysis. Thus, it would bring Trump no closer to judgment as a matter of law.

### IV. CONCLUSION

On balance, Plaintiffs concede two of the relevant factors, with another factor potentially excluded — settling at most three out of eight factors in the economic realities test. Trump cites no authority demonstrating summary judgment is appropriate where there remain genuine issues of material fact as to a majority of the factors in question. Trump argues Plaintiffs "fail . . . to cite a single authoritative case or any other binding precedent supporting their argument" (Reply 1 (alteration added)), but that is not their burden, as they do not seek judgment as a matter of law.

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Trump's Motion **[ECF No. 221]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 15th day of March, 2016.

_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

cc:  counsel of record